**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

AVEANNA HEALTHCARE, LLC,  )
           )
    Plaintiff,    )
v.           )
           )
JAYCEE EVERLY, an individual, SCOTT )  Case No.
EVERLY, an individual, and ANGELS OF )
CARE PEDIATRIC HOME HEALTH,  )
           )
    Defendants.

## COMPLAINT

Plaintiff Aveanna Healthcare, LLC ("Aveanna"), by and through its undersigned attorneys, for its Complaint against Defendants Jaycee Everly ("Jaycee"), Scott ("Scott") (collectively, the "Former Employees"), and Angels of Care Pediatric Home Health ("Angels of Care") (collectively, "Defendants"), alleges upon knowledge as to itself and its own acts, and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1. Aveanna is a national home health care provider. Its Pueblo branch provides pediatric home health services including skilled nursing and certified nursing assistant care, to medically fragile children in their homes. Aveanna's business depends on two categories of relationships that take years to develop: relationships with patients and their families, and relationships with trained caregivers who provide direct care. Both are documented in proprietary records that Aveanna maintains under strict access controls.

2. Jaycee Everly served as Clinical Director of Aveanna's Pueblo branch. Scott Everly served as Executive Director. Together, they had access to the full scope of confidential information necessary to run the branch, including every patient name,

1

address, prescribed service hour, and visit schedule, as well as every caregiver's name, pay rate, and hours data.

3.      The Former Employees both entered into agreements with Aveanna that included non-competition and non-solicitation agreements.   Taken together, these provisions prohibited the Former Employees from taking steps to solicit, refer, recruit, induce, or encourage Aveanna's employees, customers, or referral sources to leave Aveanna to the benefit of a competitor.

4.      The Former Employees stole patient records and caregiver compensation data from Aveanna's systems, resigned, joined a direct competitor, and used that stolen information to gut Aveanna's Pueblo, Colorado branch.

5.      The Former Employees also spread false statements that they knew to be a lie stating that Aveanna's Colorado branch was closing.  They did this to accelerate the patient and/or employee defections.

6.      Upon information and belief, Aveanna's direct competitor, Angels of Care, hired them, hosted recruiting events targeting Aveanna's workforce, and continued benefiting from the stolen information even after its own counsel confirmed the files existed in one defendant's personal email.

7.      On information and belief, Angels of Care propagated the misinformation regarding Aveanna's purported closure and encouraged the Former Employees to spread these knowing lies in an effort to steal market share and unfairly solicit Aveanna's customers and employees.

8.      Specifically, on June 2, 2026, five days before resigning, Defendant Jaycee Everly emailed two files from her Aveanna account to her personal Gmail. One contained

2

approximately 50 patient records. The other contained the compensation data for Aveanna's entire Pueblo caregiver workforce. She did not have authorization to take these files. She signed agreements stating she would protect and not misappropriate Aveanna's trade secrets, such as these records.  She never returned them. She never told Aveanna they existed on her personal account.

9.      Both Former Employees resigned on June 7, 2026, and immediately began working for Angels of Care, a direct competitor operating in the same Pueblo market. Within days, they contacted Aveanna's patients, families, and caregivers. They falsely told them Aveanna is closing in Colorado within six months. They offered Aveanna's caregivers higher pay, guaranteed hours, and paid PTO to switch. They knew exactly which patients to call, which caregivers to target, and what wages to offer because they had and unfairly utilized Aveanna's stolen data.

10.     The next day, on June 8, 2026, Aveanna sent cease-and-desist letters to the Former Employees, reminding them of their contractual and legal obligation to protect and not misappropriate Aveanna's trade secrets.

11.     On June 11, 2026, Angels of Care hosted an "employee appreciation event" at which both Former Employees solicited Aveanna's Pueblo caregivers to defect. This occurred after Aveanna sent cease-and-desist letters to both individuals on June 8, 2026.

12.     Angels of Care knew or should have known what was happening. It hired both the Executive Director and Clinical Director of a competitor's branch on the same day they resigned. It hosted the recruiting event four days later. It saw an immediate uptick in customers and employees in the Pueblo area, nearly all of whom were previously affiliated with Aveanna.

13.     When Aveanna's counsel confronted Angels of Care with evidence of the theft, Angels of Care's own attorney confirmed that Jaycee admitted retaining Aveanna files in her personal Gmail. Yet Angels of Care continued to employ both Former Employees and continued to benefit from the patients and caregivers they solicited using Aveanna's stolen information.

14.     The harm to Aveanna is ongoing. Every patient lost, every caregiver poached, and every false statement about Aveanna's closure compounds the damage. Aveanna cannot quantify the full extent of its losses because it has not yet had the opportunity to forensically examine the Former Employees' devices and determine how widely its trade secrets were disseminated and if Angels of Care is misappropriating it to unfairly compete in other markets.

15.     Aveanna brings this action to stop the ongoing misappropriation of its trade secrets, recover its proprietary information, enforce its contractual rights, and obtain damages for Defendants' deceptive and unfair conduct.

### PARTIES

16.     Plaintiff Aveanna is a Delaware limited liability company headquartered in Atlanta, Georgia. Aveanna provides pediatric home health care services nationwide, including through its Pueblo, Colorado branch.

17.     Jaycee Everly is an individual residing at 25 Hudspeth Lane, Pueblo, Colorado 81005. Jaycee was employed by Aveanna as Clinical Director of its Pueblo branch until June 7, 2026. She is now employed by Angels of Care.

18.     Scott Everly is an individual residing at 25 Hudspeth Lane, Pueblo, Colorado 81005. Scott was employed by Aveanna as Executive Director of its Pueblo branch until June 7, 2026. He is now employed by Angels of Care.

4

19.     Angels of Care Pediatric Home Health is a home health care provider with an office at 1515 Fortino Blvd #150, Pueblo, Colorado 81008. Angels of Care is a direct competitor of Aveanna in the pediatric home health care market in Pueblo, Colorado.  On information and belief, Angels of Care is a Texas resident for purposes of jurisdiction.

**<u>JURISDICTION</u>**

20.     The Court has federal question jurisdiction over the lawsuit pursuant to 28 U.S.C. § 1331, which provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  Specifically, Aveanna alleges the Former Employees and Angels of Care violated the Defend Trade Secrets Act ("DTSA"), 18 U.S.C. § 1836 *et seq*., by intentionally misappropriating Aveanna's trade secrets.

21.     The Court has supplemental jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367(c)(4).

22.     This Court has personal jurisdiction over Jaycee because she resides in Colorado, her misappropriation occurred in Colorado, and Aveanna is harmed by her conduct in Colorado.

23.     This Court has personal jurisdiction over Scott because he resides in Colorado, his misappropriation occurred in Colorado, and Aveanna is harmed by his conduct in Colorado.

24.     This Court has personal jurisdiction over Angels of Care because it operates an office in Pueblo, Colorado, it hired the Former Employees in Colorado, and it damaged Aveanna by utilizing the stolen trade secrets in Colorado.

25.     This Court is the appropriate venue pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Aveanna's claims occurred in this

District. The theft of Aveanna's trade secrets occurred in Pueblo, Colorado. The Former Employees reside in this District. Angels of Care operates in this District. Aveanna suffers the harm from Defendants' conduct in this District.

## FACTS

### A.    Aveanna's Business

26.    Aveanna is a national home health care provider and operates pediatric home health branches throughout the United States, including in Pueblo, Colorado. As a home health care service provider, Aveanna provides skilled nursing, certified nursing assistance, and other clinical services to medically fragile children in their homes.

27.    Patients are referred to Aveanna for in-house therapy for orthopedic injuries, patient therapy or care for acute or chronic conditions, maintenance therapy for patients who require ongoing care for progressive conditions, and other services. Aveanna employees work at patients' residences, which include assisted living facilities.

28.    Aveanna's Pueblo branch employs two categories of workers. The first is clinical and administrative leadership—positions like those held by the Former Employees (Executive Director and Clinical Director)—who oversee branch operations, manage caregiver staffing, develop referral source relationships, and coordinate patient care. The second is direct caregivers—registered nurses, licensed practical nurses, and certified nursing assistants—who provide hands-on clinical services to patients in their homes.

29.    Aveanna's business depends on referrals from physicians, hospitals, and other healthcare providers who identify pediatric patients in need of home health services. Aveanna invests significant time and resources cultivating these referral-source relationships. Because patients and their families develop trust with specific caregivers,

and because medically fragile children require continuity of care, patients typically remain with Aveanna for extended periods once services begin.

30.    The most resource-intensive phase of patient care is the initial intake: identifying the patient's needs, developing a plan of care, credentialing and assigning appropriate caregivers, and coordinating with the patient's physicians. Once that significant upfront investment is made, Aveanna earns revenue over the duration of the patient relationship.

31.    Patients are not contractually obligated to remain with Aveanna through completion of their plan of care; however, once a good patient relationship is developed with an Aveanna clinical or medical provider, patients typically remain with Aveanna until cleared for discharge. On average, a patient stays with Aveanna between 90 to 120 days.

32.    Aveanna's competitive position depends on three assets: its patient relationships, its trained caregiver workforce, and the proprietary data that connects the two. A competitor with access to Aveanna's patient lists, service schedules, and caregiver compensation data can bypass the costly intake process, target Aveanna's existing patients, and poach Aveanna's caregivers by offering marginally higher wages, all without investing the time and resources Aveanna spent building those relationships.

33.    Therefore, Aveanna has a strong business incentive to protect its relationships with patients, employees, and referral sources. If a competitor obtains Aveanna's proprietary data, the competitive advantage Aveanna built over years of investment disappears overnight. That is what happened here.

**B.    Aveanna's Trade Secrets**

34.    Aveanna maintains confidential and trade secret information critical to its operations, including:

a) Patient names, home addresses, and contact information;

b) Parent and family caregiver names and contact information;

c) Prescribed CNA and nursing service hours;

d) Patient visit schedules and care details;

e) Patient diagnoses and medical information;

f) Caregiver names, base pay rates, gross wages, regular hours, and overtime data;

g) Caregiver assignments to specific patients;

h) Referral source names and contact information; and

i) Internal business strategies, staffing plans, and financial data.

35.    This information derives independent economic value from not being generally known to Aveanna's competitors. Aveanna's patient records represent years of relationship development, clinical coordination, and resource investment. Its caregiver compensation data reflects proprietary decisions about market positioning, retention strategy, and labor economics. A competitor cannot replicate this information without time-intensive and substantial independent effort, or by stealing it.

36.    Aveanna takes reasonable measures to protect the secrecy of this information:

a) Access to patient records and caregiver compensation data is restricted through password-protected electronic systems with role-based access controls. Not all employees can access all information. Access is granted based on job function and need.

b) Aveanna requires employees with access to confidential information to execute written confidentiality agreements acknowledging the protected nature of the information and prohibiting its removal, use, or disclosure outside the Company. Jaycee Everly Agreement, attached hereto as Exhibit A; Scott Everly Agreement, attached hereto as Exhibit B.[1]

---

[1] All Exhibits are incorporated into the Complaint as is fully stated therein.

c) Aveanna does not share patient information, caregiver compensation data, or internal business records with the public or with competitors.

d) Aveanna's patient information is protected under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), which imposes strict limitations on the use and disclosure of protected health information.

e) When employees separate from Aveanna, their system access is terminated and Aveanna investigates whether confidential information was improperly retained or transmitted.

f) When employees separate from Aveanna, Aveanna reminds them of their continuing confidentiality obligations, terminates their system access, and investigates whether confidential information was improperly retained or transmitted.

**C.     Jaycee's Theft of Trade Secrets And The Scheme Using Stolen Information**

37.    On June 2, 2026, five days before she resigned, Jaycee transmitted at least two files from her Aveanna email account (Jaycee.Everly@aveanna.com) to her personal Gmail account.

38.    One file contained approximately 50 Aveanna patient records, including patient names, home addresses, parent caregiver names, prescribed CNA service hours, and patient visit schedules and care details.

39.    The second file contained the names, base pay rates, gross wages, regular hours, and overtime data of the Pueblo branch caregiver workforce.

40.    Jaycee did not have authorization to transmit this information to a personal account. Her agreement with Aveanna expressly prohibited removing or copying documents containing Confidential Information or Trade Secrets.

41.    Jaycee has not returned these files. She has not deleted them. She did not disclose their existence to Aveanna.

42.     In a July 1, 2026, letter to Aveanna's counsel, Angels of Care's counsel confirmed that Jaycee "retained two documents in her personal Gmail account following her departure, entitled 'Caregiver List.pdf' and 'CNA CP Breakdown.pdf.'" A true and correct copy of that letter is attached as Exhibit C.

43.     Beginning no later than the weekend of June 6–7, 2026, both Former Employees contacted Aveanna patients, patient families, and caregivers to solicit them to switch to Angels of Care.

44.     The Former Employees falsely represented to Aveanna's patients, families, and caregivers that Aveanna is closing in Colorado within six months and that patients need to switch to Angels of Care to maintain services. This representation is false and the Former Employees knew it was false at the time they communicated it. Aveanna is not closing in Colorado.

45.     On June 7, 2026, Jaycee offered Aveanna caregiver Brittany Peale guaranteed hours, a pay increase, and paid PTO if she moved to Angels of Care. Jaycee told Peale that Angels of Care would notify Aveanna on her behalf.

46.     On June 8, 2026, Aveanna sent cease-and-desist letters to both Former Employees demanding they stop. Both continued soliciting after receiving those letters. A true and correct copy of these letters are attached as Exhibits D and E.

47.     On June 11, 2026, both Former Employees co-hosted Aveanna's Pueblo caregivers at an Angels of Care "employee appreciation event."

48.     Aveanna has documented statements from named caregivers and family members confirming these contacts and the false representations about Aveanna's closure.

10

49.     The Former Employees' ability to target specific patients, identify specific caregivers, and offer competitive wages was made possible by their possession of Aveanna's stolen trade secret information, specifically the patient records and caregiver compensation data exfiltrated on June 2, 2026.

**D.     Angels of Care's Role**

50.     Angels of Care hired both Former Employees immediately after they resigned from Aveanna on June 7, 2026.

51.     Angels of Care is a direct competitor operating in the same geographic market. It hired the Executive Director and Clinical Director of a competitor's branch on the same day they resigned.

52.     On June 11, 2026, Angels of Care paid for and hosted the "employee appreciation event" at which both Former Employees solicited Aveanna's caregivers. This event occurred at an Angels of Care facility with Angels of Care's participation.

53.     On June 25, 2026, after completing an internal investigation, Aveanna's counsel sent a demand letter to Angels of Care identifying the theft of trade secrets, providing evidence of the June 2 email transmission, and demanding that Angels of Care stop using Aveanna's information.

54.     Angels of Care has continued to employ both Former Employees. It has continued to benefit from the patients and caregivers solicited through the use of Aveanna's stolen information.

55.     On information and belief, Angels of Care knew or had reason to know that the Former Employees obtained Aveanna's information through improper means and used that information to solicit patients and caregivers to Angels of Care.

**E.**    **Defendants Must Be Enjoined From Continued Misappropriation and From Using or Benefiting From Aveanna's Stolen Trade Secrets**

56.    Defendants have intentionally and flagrantly stolen Aveanna's proprietary trade secrets to benefit Angels of Care, in bad faith, with malice, and through willful and wanton misconduct.

57.    The Former Employees abused their positions as the two most senior leaders of Aveanna's Pueblo branch. They used their access to exfiltrate the branch's most sensitive data and then deployed that data against Aveanna within days of resigning.

58.    If Defendants are permitted to continue using or benefiting from the trade secrets they misappropriated, Aveanna will suffer irreparable harm to its Pueblo operations, its patient relationships, its caregiver workforce, and its competitive position in the Colorado market.

59.    Defendants acted in concert. Jaycee took the files. Both Former Employees used them to solicit patients and caregivers. Angels of Care hired them, hosted recruiting events, and continued to benefit from the stolen information even after its own counsel confirmed the files existed.

60.    As a result of Defendants' conduct, Aveanna has lost patients from its Pueblo branch, lost caregivers, been forced to expend significant resources investigating the theft and attempting to stabilize its operations, and suffered reputational harm from the false statements that it is closing in Colorado.

61.    The harm is ongoing. Every day Defendants retain Aveanna's trade secrets, every patient they solicit using stolen data, and every caregiver they recruit using stolen compensation information compounds the injury to Aveanna.

12

**F.      The Former Employees Owed Aveanna a Duty to Protect Its Confidential Information and Trade Secrets**

62.      As Clinical Director and Executive Director of Aveanna's Pueblo branch, Jaycee and Scott held the two most senior positions in the office. In those roles, they had access to the complete range of Aveanna's confidential and trade secret information for the Pueblo market, including patient records, caregiver compensation data, referral source relationships, and internal business strategies.

63.      Both Former Employees were expressly aware that they were prohibited from using, removing, or disclosing Aveanna's confidential information and trade secrets. As a condition of their employment, both executed Protective Agreements with Aveanna acknowledging the confidential nature of this information and their obligations to protect it.

64.      In their Protective Agreements, both Former Employees acknowledged that Aveanna's Confidential Information and Trade Secrets "constitute confidential and proprietary Company business information and/or Trade Secrets of the Company, all of which are the Company's exclusive property and in which the Company invests considerable effort, time and money to establish and improve." Ex. A § 4.1; Ex. B § 4.1.

65.      Both agreed they would not "use Confidential Information or Trade Secrets for the benefit of any person or entity other than the Company." Ex. A § 4.1(a); Ex. B § 4.1(a).

66.      Both agreed they would not "remove, copy, duplicate or otherwise reproduce any document or tangible item embodying or pertaining to any of the Confidential Information or Trade Secrets, except as required to perform responsibilities for the Company." Ex. A § 4.1(b); Ex. B § 4.1(b).

67.     Both agreed they would not "load, install, copy, store, or otherwise retain any Confidential Information on any non-Company computer or other device." Ex. A § 4.1(c); Ex. B § 4.1(c).

68.     Both agreed they would not "publish, release, disclose, deliver or otherwise make available to any third party any Confidential Information or Trade Secrets by any communication, including oral, documentary, electronic or magnetic information transmittal device or media." Ex. A § 4.1(d); Ex. B § 4.1(d).

69.     Both agreed, upon their last day of employment, to "immediately return to the Company all property and information belonging to the Company (in electronic or hard-copy form)." Ex. A § 5; Ex. B § 5.

70.     These obligations survive the termination of employment and last as long as the information remains confidential. Ex. A § 4.2; Ex. B § 4.2.

71.     Jaycee violated every one of these obligations. She copied Aveanna's trade secrets to her personal Gmail account five days before resigning. She did not return the information upon separation. She used the information for the benefit of Angels of Care. She disclosed it to a third party. She never told Aveanna she had it.

72.     Upon information and belief, Scott violated these obligations as well. He used Aveanna's trade secret information to solicit patients and caregivers for Angels of Care's benefit. He did not return any Aveanna information upon separation.

73.     Neither Former Employee can claim ignorance. They held the most senior positions in the branch. The Former Employees knew exactly what they could not do. They did it anyway, deliberately and in bad faith.

14

**G.    The Former Employees Violated Contractual Obligations Owed to Aveanna**

74.    In April and May 2026, Jaycee Everly and Scott Everly, respectively, entered into Agreements with Aveanna.  A true and correct copy of these Agreements are attached as Exhibits A and B.

75.    The Agreements contain identical language setting forth restrictions on the Former Employees' conduct upon resignation or termination from Aveanna.  Pertinent here:

a) <u>Non-Solicitation and Non-Inducement of Patients or Referral Sources</u>. During the Restricted Period and in connection with a Competitive Product or Service, Employee shall not, directly or indirectly: (a) solicit or refer, or attempt to solicit, refer, or recruit any Patient or Referral Source to a Competitor; or (b) induce or encourage any Patient or Referral Source to terminate a relationship with the Company or otherwise cease accepting services or products from the Company.

b) <u>Non-Solicitation and Non-Inducement of Employees</u>. During the Restricted Period, Employee shall not, directly or indirectly: (a) solicit, recruit, or encourage (or attempt to solicit, recruit, or encourage), or by assisting others in soliciting, recruiting or encouraging, any Company employees or former employees with whom Employee worked, had business contact, or about whom Employee gained non-public or Confidential Information ("Employees or Former Employees") to terminate their employment with the Company or find employment or work with another person or entity; (b) contact or communicate with Employees or Former Employees for the purpose of inducing, assisting, encouraging and/or facilitating them to terminate their employment with the Company or find employment or work with another person or entity; (c) provide or pass along to any person or entity the name, contact and/or background information about any Employees or Former Employees or provide references or any other information about them; (d) provide or pass along to Employees or Former Employees any information regarding potential jobs or entities or persons for which to work, including but not limited to, job openings, job postings, or the names or contact information of individuals or companies hiring people or accepting job applications; and/or (e) offer employment or work to any Employees or Former Employees. For purposes of this covenant, "Former Employees" shall refer to employees who are not employed by the Company at the time of the attempted recruiting or hiring, but were employed by, or working for the Company in the three (3) months prior to the time of the attempted recruiting or hiring and/or interference.

c) <u>"Restricted Period"</u> means the period of Employee's employment with the Company and: (a) if Employee has national, regional or area responsibilities as of the Last Day, a period of twelve (12) months after the Last Day; or (b) if Employee has location responsibilities without regional or area responsibilities, as of the Last Day, a period of nine (9) months after the Last Day. Employee recognizes that this durational term is reasonably and narrowly tailored to the Company's legitimate business interest and need for protection with each position Employee holds at the Company.

d) <u>Covenants are Reasonable</u>. Employee acknowledges and agrees that: (a) the covenants in this section (i) are necessary and essential to protect the Company's Confidential Information, Trade Secrets and the goodwill in its Patients, Referral Sources, customers and employees; (ii) the area, duration and scope of the covenants are reasonable and necessary to protect the Company; (iii) do not unduly oppress or restrict Employee's ability to earn a livelihood in Employee's chosen profession; (iv) are not an undue restraint on Employee's trade or any of the public interests that may be involved; (b) good and valuable consideration exists for Employee's agreement to be bound by the covenants in this section; and (c) the Company has a legitimate business purpose in requiring Employee to abide by the covenants set forth in this section.

e) <u>Early Resolution Conference</u>. This Agreement is clear and enforceable as written and is executed by both parties on that basis. However, should Employee later challenge any provision as unclear, unenforceable, or inapplicable to any competitive activity in which Employee intends to engage, *Employee will notify the Company in writing and meet with the Company's representative and a neutral mediator (if the Company elects to retain one at its expense) to discuss resolution of any disputes between the parties at least fourteen (14) days before Employee engages in any activity prohibited, or foreseeably prohibited, by this Agreement*. The failure to comply with this requirement shall waive Employee's right at a later time to challenge the reasonable scope, clarity, applicability, or enforceability of the Agreement and its restrictions. All rights of both parties will be preserved if the Early Resolution Conference requirement is complied with even if no agreement is reached in the conference.

f) <u>Relief, Remedies and Enforcement</u>. Employee acknowledges and agrees that a breach of any provision of this Agreement by Employee will cause serious and irreparable injury to the Company that will be difficult to quantify and that money damages alone will not adequately compensate the Company. In the event of a breach or threatened or intended breach of this Agreement by Employee, the Company shall be entitled to injunctive relief, both temporary and final, enjoining and restraining such breach or threatened or intended breach. Employee further agrees that should Employee breach this Agreement, the Company will be entitled to any and all other legal or equitable remedies available to it, including the recovery

and return of any amount paid to Employee to enter into this Agreement, and/or the disgorgement of any profits, commissions, or fees realized by Employee, any subsequent employers, any business owned or operated by Employee, or any of Employee's agents, heirs, or assigns. Employee shall also pay the Company all reasonable costs and attorneys' fees the Company incurs because of Employee's breach of any provisions of this Agreement.

76.     The Agreements included a Colorado specific addendum explaining the restrictive covenants.  Ex. A, p. 14-15; Ex. B, p. 14-15.

77.     To comply with Colorado law, the Former Employees also signed a separate, standalone notice regarding the presence of these restrictive covenants.  A true and correct copy of the separate notice is attached as Exhibits F and G.

## COUNT I:  VIOLATION OF THE DEFEND TRADE SECRETS ACT (18 U.S.C. § 1836) (Against All Defendants)

78.     Aveanna incorporates by reference the allegations in the preceding paragraphs as if set forth fully herein.

79.     Aveanna has trade secret information including its patient records, caregiver compensation data, patient visit schedules, caregiver assignments, referral source information, and other proprietary information concerning the operations of its Pueblo branch. This information includes the names, home addresses, and contact information of patients and their families; prescribed service hours and care details; caregiver names, base pay rates, gross wages, regular hours, and overtime data; and referral source identities and relationships.

80.     This information derives independent economic value from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use. Aveanna's patient records represent years of relationship development, clinical coordination, and resource

investment. Its caregiver compensation data reflects proprietary decisions about market positioning, retention strategy, and labor economics that cannot be replicated without substantial independent effort.

81.     Aveanna took reasonable measures to protect the secrecy of this information. As explained above, Aveanna required employees with access to confidential information to execute Protective Agreements acknowledging the confidential nature of the information and prohibiting its removal or disclosure. Aveanna restricted access through password-protected systems with role-based controls. Aveanna did not share this information with the public or with competitors. Aveanna's patient information is further protected under HIPAA.

82.     The Former Employees acknowledged they were privy to and had an obligation to protect this information through their Protective Agreements. As Executive Director and Clinical Director of the Pueblo branch, the Former Employees were involved in every aspect of the branch's operations. They had unfettered access to Aveanna's trade secrets throughout their employment.

83.     The trade secrets involve interstate commerce. Aveanna operates in multiple states and is headquartered in Georgia. Its patients receive federally funded healthcare services. Its caregiver workforce data relates to a multistate operation.  The trade secrets were stolen in Colorado.

84.     Jaycee misappropriated Aveanna's trade secrets by transmitting them to her personal email account without authorization on June 2, 2026, retaining them after her employment ended, and using them to solicit Aveanna's patients and caregivers for the benefit of Angels of Care. She knew this information was protected trade secret

information because she signed an agreement saying so, because it was competitively sensitive, because it was derived using significant Aveanna resources, and because it provided Angels of Care a material benefit in targeting Aveanna's patients and poaching its workforce.

85.     Upon information and belief, Scott misappropriated Aveanna's trade secrets by using the stolen information to solicit Aveanna's patients and caregivers for Angels of Care's benefit. On information and belief, Scott had access to and used the files Jaycee exfiltrated. He knew this information was protected because he signed the same agreement, held the most senior position in the branch, and used the information to target specific patients and caregivers with precision.

86.     Angels of Care misappropriated Aveanna's trade secrets by acquiring them through the Former Employees, whom it knew or had reason to know obtained the information through improper means. Angels of Care used or benefited from the information through the solicitation of Aveanna's patients and caregivers (including through the Employee Appreciation recruiting event that occurred shortly after the Former Employees joined Angels of Care). Angels of Care's own counsel confirmed that Jaycee retained Aveanna files after joining Angels of Care, yet Angels of Care continues to employ both Former Employees and benefit from their solicitation activities.

87.     Defendants' misappropriation was willful and malicious. Jaycee deliberately emailed the files to herself five days before resigning. Both Former Employees continued soliciting after receiving cease-and-desist letters. Angels of Care hosted an event four days after the Former Employees resigned that was designed to recruit Aveanna's entire Pueblo caregiver workforce. Defendants compounded the misappropriation by falsely

19

telling patients and caregivers that Aveanna is closing, a lie designed to accelerate defections before Aveanna could respond.

88.    Aveanna took reasonable steps to maintain the secrecy of its information, including requiring confidentiality agreements, restricting system access, and investigating immediately upon discovering the theft. Aveanna did not delay in taking protective measures.

89.    The harm to Aveanna if it is not granted injunctive relief wholly outweighs any harm to Defendants. Defendants have no legitimate need for Aveanna's patient records or caregiver compensation data. The cost of compliance is negligible compared to the value the trade secrets represent to Aveanna's Pueblo operations.

90.    Aveanna is entitled to injunctive relief to prevent further misappropriation, damages for any loss caused by the misappropriation including unjust enrichment, exemplary damages not exceeding two times the amount of damages because the misappropriation was willful and malicious, and reasonable attorneys' fees pursuant to 18 U.S.C. § 1836(b)(3).

## COUNT II:  VIOLATION OF THE COLORADO UNIFORM TRADE SECRETS ACT
### (C.R.S. § 7-74-101 et seq.) (Against All Defendants)

91.    Aveanna incorporates by reference the allegations in the preceding paragraphs as if set forth fully herein.

92.    Aveanna has trade secret information including its patient records, caregiver compensation data, patient visit schedules, caregiver assignments, referral source information, and other proprietary information concerning the operations of its Pueblo branch. This information includes the names, home addresses, and contact information of patients and their families; prescribed service hours and care details;

20

caregiver names, base pay rates, gross wages, regular hours, and overtime data; and referral source identities and relationships.

93.    This information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use.

94.    Aveanna made efforts that are reasonable under the circumstances to maintain the secrecy of this information. As explained above, Aveanna required employees with access to confidential information to execute Protective Agreements acknowledging the confidential nature of the information and prohibiting its removal or disclosure. Aveanna restricted access through password-protected systems with role-based controls. Aveanna did not share this information with the public or with competitors. Aveanna's patient information is further protected under HIPAA.

95.    The Former Employees acknowledged they were privy to and had an obligation to protect this information through their Protective Agreements. As Executive Director and Clinical Director of the Pueblo branch, the Former Employees had unfettered access to Aveanna's trade secrets throughout their employment.

96.    The trade secrets involve Colorado. Aveanna operates its Pueblo branch in Colorado. The Former Employees reside in Colorado. The misappropriation occurred in Colorado. Aveanna is harmed in Colorado. Angels of Care operates in Colorado and benefits from the stolen information in Colorado.

97.    Jaycee misappropriated Aveanna's trade secrets by acquiring them through improper means, specifically unauthorized transmission to a personal email account on

21

June 2, 2026, and by disclosing and using them without Aveanna's consent for the benefit of Angels of Care.

98.    Upon information and belief, Scott misappropriated Aveanna's trade secrets by using information he knew or had reason to know was acquired through improper means. On information and belief, Scott had access to and used the files Jaycee exfiltrated to target specific Aveanna patients and caregivers.

99.    Angels of Care misappropriated Aveanna's trade secrets by acquiring them from the Former Employees, who it knew or had reason to know obtained the information through improper means, and by using the information to compete with Aveanna in the Pueblo market.

100.    Defendants' misappropriation was willful and malicious. Jaycee deliberately emailed the files to herself five days before resigning. Both Former Employees continued soliciting after receiving cease-and-desist letters. Angels of Care hosted the June 11 recruiting event targeting Aveanna's workforce. Defendants falsely told patients and caregivers that Aveanna is closing to accelerate defections.

101.    Aveanna took reasonable steps to maintain the secrecy of its information and did not delay in taking protective measures upon becoming aware of the theft. Aveanna investigated immediately upon the Former Employees' resignation, discovered the June 2 email transmission, and sent cease-and-desist letters within one day.

102.    The harm to Aveanna if it is not granted injunctive relief wholly outweighs any harm to Defendants. Defendants have no legitimate need for Aveanna's patient records or caregiver compensation data. The cost of compliance is negligible compared to the value the trade secrets represent.

22

103.    Aveanna is entitled to injunctive relief to prevent further misappropriation, damages for any loss caused by the misappropriation including unjust enrichment, exemplary damages not exceeding twice the amount of actual damages because the misappropriation was willful and malicious, and reasonable attorneys' fees pursuant to C.R.S. § 7-74-104 and § 7-74-105.

## COUNT III:  DECEPTIVE AND UNFAIR TRADE PRACTICES (C.R.S. § 6-1-105)
### (Against All Defendants)

104.    Aveanna incorporates by reference the allegations in the preceding paragraphs as if set forth fully herein.

105.    The Colorado Consumer Protection Act, C.R.S. § 6-1-105, prohibits deceptive trade practices in the course of business, trade, or commerce, including knowingly making a false representation as to the source, sponsorship, approval, or certification of goods or services; knowingly making a false representation as to the characteristics, uses, benefits, or quantities of goods or services; and engaging in any other unconscionable, deceptive, or unfair act or practice.

106.    Beginning no later than the weekend of June 6–7, 2026, and continuing thereafter, Defendants falsely represented to Aveanna's patients, patient families, and caregivers that Aveanna is closing in Colorado within six months. This representation is false. Aveanna is not closing in Colorado. Aveanna has no plans to close in Colorado. Defendants knew this representation was false when they made it.

107.    Defendants made this false representation for the purpose of inducing Aveanna's patients to terminate their relationship with Aveanna and switch to Angels of Care. Defendants made this false representation for the purpose of inducing Aveanna's caregivers to leave their employment with Aveanna and join Angels of Care.

108. The false representation was effective. Aveanna has documented statements from named patients, family members, and caregivers confirming that the Former Employees told them Aveanna is closing and that they needed to switch to Angels of Care to maintain services.

109. Defendants also engaged in unfair trade practices by using Aveanna's patient records and caregiver compensation data to identify and target Aveanna's patients and caregivers with precision. Defendants gained a competitive advantage they could not have obtained through legitimate means. They knew exactly which patients to contact, which caregivers to recruit, and what compensation to offer because they had stolen that information from Aveanna's systems.

110. Defendants' conduct was not lawful competition. It was the use of stolen information combined with false statements to strip a competitor of its patients and workforce.

111. Defendants' deceptive and unfair conduct occurred in the course of business, trade, and commerce in Colorado. Angels of Care operates a home health care business in Pueblo, Colorado. The Former Employees solicited patients and caregivers in Colorado on behalf of Angels of Care. The patients and caregivers who were deceived reside in Colorado and receive services in Colorado.

112. Aveanna has suffered actual damages as a result of Defendants' deceptive and unfair trade practices. Aveanna has lost patients from its Pueblo branch. Aveanna has lost caregivers from its Pueblo branch. Aveanna has lost revenue. Aveanna has been forced to expend significant resources responding to the false closure narrative. The full extent of damages is in an amount to be proven at trial.

24

113.    Defendants' conduct was willful and knowing. Jaycee deliberately took the files. Both Former Employees deliberately lied about Aveanna's closure. They continued lying after receiving cease-and-desist letters. Angels of Care hosted the June 11 event knowing full well that its new employees were using stolen data and false statements to recruit Aveanna's workforce.

## COUNT IV:  BREACH OF CONTRACT
### (Against Scott and Jaycee Everly)

114.    Aveanna incorporates by reference the allegations in the preceding paragraphs as if set forth fully herein.

115.    As a requirement of their administrative positions with Aveanna, the Former Employees entered into valid and enforceable Agreements.

116.    The Agreements contained non-competition and non-solicitation provisions.

117.    The Former Employees agreed that these restrictive covenants were reasonable, necessary to protect Aveanna, and enforceable.

118.    The Former Employees breached the non-competition provision by resigning from Aveanna and instantly becoming employees of and performing similar duties for Angels of Care.

119.    The Former Employees work for Angels of Care was in the same geographic region in which they worked for Aveanna.

120.    The Former Employees did not have permission from Aveanna and the Former Employees' conduct was not justified or excused.

121.    The Former Employees' unfair competition in violation of the Agreement damaged Aveanna in an amount to be determined at trial.

25

122. The Former Employees breached the non-solicitation provision by actively working to recruit and solicit current and former employees of Aveanna to work for Angels of Care.

123. The Former Employees breached the non-solicitation provision by actively working to recruit and solicit current and former customers of Aveanna to move from Aveanna to Angels of Care.

124. The Former Employees solicited employees and customers of Aveanna in the same geographic region in which they had worked or used Aveanna.

125. The Former Employees did not have permission from Aveanna and the Former Employees' conduct was not justified or excused.

126. The Former Employees' unfair competition in violation of the Agreement damaged Aveanna in an amount to be determined at trial.

127. Aveanna is entitled to recover damages, equitable relief, as well as its attorneys' fees and costs.

## PRAYER FOR RELIEF

Accordingly, Aveanna requests that Defendants be cited to appear and answer, and respectfully requests this Court award:

1. Enter temporary, preliminary, and permanent injunctive relief prohibiting Defendants from using, disclosing, or benefiting from Aveanna's trade secrets and confidential information, including but not limited to the patient records and caregiver compensation data exfiltrated on June 2, 2026;

2. Enter temporary, preliminary, and permanent injunctive relief prohibiting Defendants from making false representations that Aveanna is closing in Colorado or any other false statement designed to induce Aveanna's patients, families, or caregivers to switch to Angels of Care;

3. Order Defendants to return and permanently delete all Aveanna trade secrets and confidential information in their possession, custody, or control,

26

including on personal email accounts, personal devices, Angels of Care systems, and any other location;

4.      Order forensic inspection of Defendants' devices and accounts to identify the full scope of Aveanna's trade secrets that were taken, the extent of their dissemination, and whether any information has been destroyed;

5.      Award Aveanna actual and compensatory damages for any loss caused by the misappropriation, including lost patients, lost caregivers, and lost revenue, in an amount to be proven at trial;

6.      Award Aveanna damages for unjust enrichment, including any profits or benefits Defendants obtained through their use of Aveanna's stolen trade secrets;

7.      Award Aveanna exemplary damages not exceeding two times the amount of damages pursuant to 18 U.S.C. § 1836(b)(3)(C) and C.R.S. § 7-74-104(2) because Defendants' misappropriation was willful and malicious;

8.      Award Aveanna treble damages pursuant to C.R.S. § 6-1-113(2)(a) because Defendants' deceptive and unfair trade practices were willful and knowing;

9.      Award Aveanna its reasonable attorneys' fees and costs as permitted by the Agreement as well as 18 U.S.C. § 1836(b)(3)(D), C.R.S. § 7-74-105, and C.R.S. § 6-1-113(2)(b);

10.     Award Aveanna pre-judgment and post-judgment interest as provided by law;

11.     Order disgorgement of any profits obtained by Defendants through their unlawful conduct; and

12.     Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff demands a jury for all claims so triable.


Respectfully submitted,

Dated: July 8, 2026                  GREENBERG TRAURIG, LLP

                                     By:  */s/ Andrew Barr*
                                          Andrew D. Barr, Bar No. 49644
                                          andrew.barr@gtlaw.com


27

1144 15th Street, Suite 3300
Denver, CO 80202-2686
Telephone:    +1 303 572 6575
Facsimile:    +1 303 572 6540

Justin K. Victor (pro hac vice forthcoming)
Fallon D. Jones (pro hac vice forthcoming)
GREENBERG TRAURIG, LLP
3333 Piedmont Road NE, Suite 2500
Atlanta, GA 30305
Telephone:    678 553 2100
victorj@gtlaw.com
Fallon.Jones@gtlaw.com

*Counsel for Aveanna Healthcare, LLC*