# EXHIBIT A

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1

## PROTECTIVE AGREEMENT

### Non-Solicitation and Confidentiality

This Protective Agreement ("**Agreement**") is made by and between Aveanna Healthcare LLC, and its parents, subsidiaries, affiliates, predecessors, successors and assigns (the "**Company**") and the undersigned individual ("**Employee**").

**WHEREAS**, the Company and Employee agree that the Company has a legitimate business interest in, among other things, its Confidential Information (defined below) and Trade Secrets (defined below), and in the significant time, money, training, team building and other efforts it expends to develop Employee's skills to assist Employee in performing Employee's duties for the Company, including with respect to establishing, developing and maintaining the goodwill and business relationships with the Company's Patients (defined below), Referral Sources (defined below), employees, vendors and suppliers, all of which Employee agrees are valuable assets of the Company to which it has devoted substantial resources;

**WHEREAS**, the Company and Employee agree that the Company's Confidential Information and Trade Secrets, including key information about, and goodwill in, its Patients, Referral sources, employees, vendors and suppliers are not generally known to the public, were developed over time and at significant cost to the Company, and are the subject of reasonable efforts of protection by the Company against disclosure to unauthorized parties;

**WHEREAS**, as part of performing Employee's responsibilities for the Company, Employee will have access to and/or will use the Company's Confidential Information and Trade Secrets and will work with Patients, Referral Sources employees, vendors and suppliers; and

**WHEREAS**, the Company and Employee agree that this Agreement is reasonable to protect the Company against the irreparable harm it would suffer if Employee left the Company's employment (for any reason) and used or disclosed its Confidential Information and Trade Secrets, and/or interfered with the goodwill and relationships the Company has in its Patients, Referral Sources, employees, vendors and suppliers.

**NOW, THEREFORE**, for good and valuable consideration, to which Employee would not otherwise be entitled without entering into this Agreement, including: (a) the promises and covenants contained in this Agreement; (b) Employee's employment or continued employment with the Company; (c) Employee's access to and use of the Company's Confidential Information and Trade Secrets, including key information about, and goodwill in, its Patients, Referral Sources, employees, vendors and suppliers; (d) bona fide promotion or eligibility for future bonus payments; (e) the specialized training the Company provides to Employee to allow Employee to perform Employee's duties for the Company; and/or (f) other good and valuable monetary consideration, the Company and Employee agree as follows (including the foregoing recitals which are expressly incorporated in this Agreement):

1.      **Disclosures**. To maintain Employee's confidentiality obligations and to avoid conflicts of interest which may arise, Employee will disclose (and allow the Company to disclose) to any future prospective employers the existence of this Agreement and the nature of Employee's confidentiality and restrictive covenant obligations arising from it before Employee accepts any new position of employment.

2.      **Definitions**.

2.1     "**Confidential Information**" means any non-public knowledge, data, or information – in tangible, intangible, or any other form – that is created by, used in or related to the Company's actual or anticipated business, products, research or development, or to the Company's technical data, Trade Secrets, or know-how, including but not limited to: proprietary artificial intelligence (AI): (w) models and algorithms (*e.g.*, model weights, parameters, source code, architecture, and hyperparameters), (x) data used in AI processes (*e.g.*, training and testing data, user prompts and inputs, and inference data); (y) workflows and outputs (*e.g.*, generated outputs (reports, summaries, code or creative content), retrieval-augmented generation (RAG) data (proprietary knowledge bases accessed by AI to improve accuracy), and model fine-tuning processes (the methodology and data used to adapt pre-trained models to specific tasks)), and (z) technical and operational safeguards (*e.g.*, system architecture, API keys and access protocols); Trade Secrets; proprietary or customized software and databases; manufacturing processes and methods, product formulas, research and development; new product plans; the Company's

7

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1



confidential records pertaining to its existing or potential Patients or Referral Sources, including key Patient and Referral Source contact information; contract terms and related information; confidential business opportunities; merger or acquisition activity (including targets, opportunities, or prospects); confidential information regarding suppliers or vendors, including key supplier or vendor contact information, contract terms and related information; strategies for advertising and marketing; confidential business processes and strategies, including training, policies and procedures; personnel composition (wages, specialization, etc.); financial and revenue data and reports, including pricing, quoting and billing methods; and any other business information that the Company maintains as confidential. Employee specifically understands and agrees that the term Confidential Information also includes: (a) other information that is marked confidential or proprietary, or that would otherwise appear to a reasonable person to be confidential or proprietary; (b) for Employee in a managerial/supervisory role or for Employee who is granted special access to use in the performance of Employee's job duties - payroll and human resources information regarding other employees (including information about other employees' compensation, benefits, and performance) - which shall be safeguarded and only used / disclosed as necessary to perform Employee's job duties; (c) all confidential information of third parties (*e.g.*, vendors, suppliers, Patients and Referral Sources) that may be communicated to, acquired by, learned of, or developed by Employee in the course of or as a result of Employee's employment with the Company or to which the Company has confidentiality obligations or use restrictions; and (d) the protection of co-worker protected health information, unless the co-worker in question or the co-worker's legal representative has authorized Employee to disclose such information; and (e) the identity and medical condition of the Company's patients, including in compliance with the Company's policies and the Health Insurance Portability and Accountability Act of 1996. Confidential Information does not include information that is or may become known to Employee or to the public from sources outside the Company and through means other than a breach of this Agreement or disclosed by Employee after written approval from the Company.

2.2    "**Competitive Product or Service**" means any product, process, system or service (in existence or under development) of any person or organization other than the Company that is (a) the same as, similar to, or competes with the Company's business and (b) upon which Employee worked or had responsibilities at the Company during the twenty-four (24) months prior to the Last Day (as defined below).

2.3    "**Competitor**" means Employee or any other person or organization engaged in or planning to engage in, research or development, production, marketing, leasing, selling, or servicing of a Competitive Product or Service.

2.4    "**Indirectly**" means assisting or working with any third person(s) or entity(ies), either personally or through the supervision of employees, including the supervision of the selling or solicitation of products or services. For Employee in North Carolina (or in any other jurisdiction that rejects the term "indirectly"), "Indirectly" as used throughout this Agreement shall exclusively mean "directly."

2.5    "**Last Day**" means Employee's last day of employment with the Company regardless of the reason for Employee's separation, including voluntary and involuntary. It does not encompass Employee's continuous employment between Company affiliates or entities. Such movement shall be deemed as unbroken and continued employment under this Agreement and its restrictive covenants.

2.6    "**Patient(s)**" means any person(s) whom, within twenty-four (24) months prior to the Last Day, Employee, directly or indirectly (*e.g.*, through employees whom Employee supervised): (a) provided products or services in connection with the Company's business; or (b) provided written proposals about products or services in connection with the Company's business.

2.7    "**Referral Source(s)**" means any doctor, nurse, healthcare professional, or any employee or independent contractor of any hospital, rehabilitation center and/or physical therapy office with which, in the twenty-four (24) months prior to the Last Day, Employee, directly or indirectly (*e.g.*, through employees whom Employee supervised) had a business relationship that referred Patients or projects or leads for Patients or projects to the Company.

2.8    "**Restricted Period**" means the period of Employee's employment with the Company and: (a) if Employee has national, regional or area responsibilities as of the Last Day, a period of twelve (12) months after the Last Day; or (b) if Employee has location responsibilities without regional or area responsibilities, as of the Last Day, a period of nine (9) months after the Last Day. Employee recognizes that this durational term is reasonably and narrowly tailored to the Company's legitimate business interest and need for protection with each position Employee holds at the Company.

8

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1



2.9      "**Trade Secret**" means information defined as a trade secret under applicable state law or the Defend Trade Secrets Act of 2016.

3.      <u>**Restrictive Covenants**</u>. To protect the Company's legitimate business interests, including with respect to Employee's access to and use of the Company's Confidential Information and Trade Secrets, including key information about, and goodwill in, its Patients, Referral Sources, employees vendors and suppliers, Employee agrees that:

3.1      <u>Intentionally Omitted.</u>

3.2      <u>Non-Solicitation and Non-Inducement of Patients or Referral Sources.</u>  During the Restricted Period and in connection with a Competitive Product or Service, Employee shall not, directly or indirectly: (a) solicit or refer, or attempt to solicit, refer, or recruit any Patient or Referral Source to a Competitor; or (b) induce or encourage any Patient or Referral Source to terminate a relationship with the Company or otherwise cease accepting services or products from the Company.

3.3      <u>Non-Solicitation and Non-Inducement of Employees.</u> During the Restricted Period, Employee shall not, directly or indirectly: (a) solicit, recruit, or encourage (or attempt to solicit, recruit, or encourage), or by assisting others in soliciting, recruiting or encouraging, any Company employees or former employees with whom Employee worked, had business contact, or about whom Employee gained non-public or Confidential Information ("Employees or Former Employees") to terminate their employment with the Company or find employment or work with another person or entity; (b) contact or communicate with Employees or Former Employees for the purpose of inducing, assisting, encouraging and/or facilitating them to terminate their employment with the Company or find employment or work with another person or entity; (c) provide or pass along to any person or entity the name, contact and/or background information about any Employees or Former Employees or provide references or any other information about them; (d) provide or pass along to Employees or Former Employees any information regarding potential jobs or entities or persons for which to work, including but not limited to, job openings, job postings, or the names or contact information of individuals or companies hiring people or accepting job applications; and/or (e) offer employment or work to any Employees or Former Employees. For purposes of this covenant, "Former Employees" shall refer to employees who are not employed by the Company at the time of the attempted recruiting or hiring, but were employed by, or working for the Company in the three (3) months prior to the time of the attempted recruiting or hiring and/or interference.

3.4      <u>Non-interference of Vendors and Suppliers.</u> During the Restricted Period, Employee will not directly or indirectly interfere with the Company's relationships with its vendors or suppliers in any manner that would impair the Company's relationship with such vendors or suppliers, including by reducing, diminishing or otherwise restricting the flow of supplies, services or goods from the vendors or suppliers to the Company.

3.5      <u>Covenants are Reasonable.</u> Employee acknowledges and agrees that: (a) the covenants in this section (i) are necessary and essential to protect the Company's Confidential Information, Trade Secrets and the goodwill in its Patients, Referral Sources, customers and employees; (ii) the area, duration and scope of the covenants are reasonable and necessary to protect the Company; (iii) do not unduly oppress or restrict Employee's ability to earn a livelihood in Employee's chosen profession; (iv) are not an undue restraint on Employee's trade or any of the public interests that may be involved; (b) good and valuable consideration exists for Employee's agreement to be bound by the covenants in this section; and (c) the Company has a legitimate business purpose in requiring Employee to abide by the covenants set forth in this section.

3.6      <u>Early Resolution Conference.</u> This Agreement is clear and enforceable as written and is executed by both parties on that basis. However, should Employee later challenge any provision as unclear, unenforceable, or inapplicable to any competitive activity in which Employee intends to engage, Employee will notify the Company in writing and meet with the Company's representative and a neutral mediator (if the Company elects to retain one at its expense) to discuss resolution of any disputes between the parties at least fourteen (14) days before Employee engages in any activity prohibited, or foreseeably prohibited, by this Agreement. The failure to comply with this requirement shall waive Employee's right at a later time to challenge the reasonable scope, clarity, applicability, or enforceability of the Agreement and its restrictions. All rights of both parties will be preserved if the Early Resolution Conference requirement is complied with even if no agreement is reached in the conference.

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1

3.7     General Exceptions. Employee understands that the restrictive covenant obligations in this section shall not apply to Employee if Employee is covered under applicable federal law, state statute or local ordinance/rule prohibiting non-solicits, including on the basis of Employee's income or profession.

4.     **Confidential Information and Trade Secrets**.

4.1     Access and Use. Employee acknowledges and agrees that, by virtue of Employee's employment with the Company and exercise of Employee's duties for the Company, Employee will have access to and will use certain Confidential Information and Trade Secrets, and that such Confidential Information and Trade Secrets constitute confidential and proprietary Company business information and/or Trade Secrets of the Company, all of which are the Company's exclusive property and in which the Company invests considerable effort, time and money to establish and improve. Accordingly, Employee agrees that, except exclusively on behalf of the Company, Employee shall not, and shall not permit any other person or entity to, directly or Indirectly, without the prior written consent of the Company: (a) use Confidential Information or Trade Secrets for the benefit of any person or entity other than the Company; (b) remove, copy, duplicate or otherwise reproduce any document or tangible item embodying or pertaining to any of the Confidential Information or Trade Secrets, except as required to perform responsibilities for the Company; (c) load, install, copy, store, or otherwise retain any Confidential Information on any non-Company computer or other device; and (d) while employed and thereafter, publish, release, disclose, deliver or otherwise make available to any third party any Confidential Information or Trade Secrets by any communication, including oral, documentary, electronic or magnetic information transmittal device or media. In addition, with respect to the Company's AI, Employee shall not: (x) use Confidential Information or Trade Secrets to train, refine, or improve third-party AI models, (y) upload data to public AI tools without the Company's express written consent; and (z) allow third-party AI vendors to retain Company input/output data.

4.2     Duration of Confidential Information and Trade Secrets. This obligation of non-disclosure and non-use shall last so long as the information remains confidential. However, Employee understands that if Employee primarily lives and works in any state requiring a temporal limit on non-disclosure clauses, Confidential Information that is not a Trade Secret shall be protected for no less than two (2) years following the Last Day. Employee also understands that Trade Secrets are protected by statute and are not subject to any time limits. Employee also agrees to contact the Company's Chief Legal Officer in writing before using, disclosing, or distributing any Confidential Information or Trade Secrets if Employee has any questions about whether such information is protected information.

4.3     Immunity under the Defend Trade Secrets Act of 2016. Employee shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a Trade Secret that: (a) is made (i) in confidence to a Federal, State, or local government official, either directly or Indirectly, or to an attorney, and (ii) solely for the purpose of reporting or investigating a suspected violation of law; or (b) is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. In certain circumstances, disclosures to attorneys made under seal or pursuant to court order are also protected under said Act.

4.4     Additional Legal Exceptions to Non-Disclosure Obligations. Nothing in this Agreement shall be construed to prevent Employee's disclosure of Confidential Information as may be required by applicable law or regulation, especially with respect to reporting a violation in good faith or cooperating with a Federal or State administrative agency (*e.g.*, Securities and Exchange Commission, Department of Labor, Equal Employment Opportunity Commission (or equivalent state employment agencies), etc.), or pursuant to the valid order of a court of competent jurisdiction; provided that the disclosure does not exceed the extent of disclosure required by such law, regulation, or order. Only with respect to an order of a court of competent jurisdiction, Employee shall promptly provide the Company's Chief Legal Officer with written notice of any such order. If the Company chooses to seek a protective order or other remedy, Employee shall cooperate fully with the Company. If the Company does not obtain a protective order or other remedy or waives compliance with certain provisions of this Agreement, Employee shall furnish only that portion of the Confidential Information which, in the written opinion of counsel, is legally required to be disclosed and Employee shall use Employee's best efforts to obtain assurances that confidential treatment will be accorded to such disclosed Confidential Information. In addition, nothing in this Agreement in any way prohibits or is intended to restrict or impede, and shall not be interpreted or understood as restricting or impeding Employee from: (a) exercising Employee's rights under Section 7 of the National Labor Relations Act (NLRA) (including with respect to engaging in concerted activities for the purpose of collective bargaining or other mutual aid or protection, discussing terms and conditions of employment, or otherwise engaging in protected conduct); or (b) otherwise disclosing or discussing truthful

10

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1



information about unlawful employment practices (including unlawful discrimination, harassment, retaliation, or sexual assault).

5.    **Return of Company Property and Information/Social Media**. Employee agrees that upon the Last Day (or earlier if requested by the Company) Employee shall immediately return to the Company all property and information belonging to the Company (in electronic or hard-copy form). Employee shall also disclose to the Company any passwords for Employee's Company computer or other access codes for anything associated with Employee's employment with the Company, and shall not delete or modify any property (including by factory resetting or wiping devices) prior to its return to the Company. To the extent that any Company information (whether or not such information is designated as confidential or proprietary) resides on Employee's personal computer, tablet, external hard drives, flash drives, cloud-based storage platforms, or any other personal device or storage location ("**Employee Devices**"), Employee shall cooperate with the Company to remove or delete such information from the Employee Devices, including, if the Company requests it, by providing the Company with access and passwords to the Employee Devices. Unless otherwise agreed to in writing by the Company in advance, Employee further acknowledges and agrees that, beginning on the Last Day, (a) Employee shall remove any reference to the Company as Employee's current employer from any source Employee controls, either directly or Indirectly, including, but not limited to, any social media, including LinkedIn, Facebook, X (formerly known as Twitter), Instagram, and/or TikTok, etc. and (b) Employee is not permitted to represent Employee as currently being employed by the Company to any person or entity, including, but not limited to, on any social media.

6.    **At-Will.** Employee acknowledges and agrees that nothing in this Agreement is a guarantee or assurance of employment for any specific period of time. Employee understands that, unless prohibited by law, Employee is an at-will employee and that either Employee or the Company may terminate this at-will employment relationship at any time for any reason not otherwise prohibited by law.

7.    **Severability and Reformation**. The covenants in each section of this Agreement are independent of any other provisions of this Agreement. Each term in this Agreement constitutes a separate covenant between the parties, and each term is fully severable from any other term. Employee and the Company agree if any particular paragraphs, subparagraphs, phrases, words, or other portions of this Agreement are determined by an appropriate court to be invalid or unenforceable as written, they shall be modified as necessary to comport with the reasonable intent and expectations of the parties and in favor of providing reasonable protection to all of the Company's legitimate business interests, and such modification shall not affect the remaining provisions of this Agreement, or if they cannot be modified to be made valid or enforceable, then they shall be severed from this Agreement, and all remaining terms and provisions shall remain enforceable.

8.    **Tolling**. As a form of equitable relief, unless prohibited by law, the Company reserves the right to request, and Employee will not object, that a court of competent jurisdiction extend the Restricted Period for any period of time that Employee is in breach of this Agreement so that the Company receives the full benefit of Employee's promises in the restrictive covenants.

9.    **Relief, Remedies and Enforcement**. Employee acknowledges and agrees that a breach of any provision of this Agreement by Employee will cause serious and irreparable injury to the Company that will be difficult to quantify and that money damages alone will not adequately compensate the Company. In the event of a breach or threatened or intended breach of this Agreement by Employee, the Company shall be entitled to injunctive relief, both temporary and final, enjoining and restraining such breach or threatened or intended breach. Employee further agrees that should Employee breach this Agreement, the Company will be entitled to any and all other legal or equitable remedies available to it, including the recovery and return of any amount paid to Employee to enter into this Agreement, and/or the disgorgement of any profits, commissions, or fees realized by Employee, any subsequent employers, any business owned or operated by Employee, or any of Employee's agents, heirs, or assigns. Employee shall also pay the Company all reasonable costs and attorneys' fees the Company incurs because of Employee's breach of any provisions of this Agreement.

10.    **Entire Agreement, Amendments**. Employee agrees that this Agreement constitutes the entire agreement and understanding between the parties and supersedes any prior agreements, either oral or in writing, between Employee and the Company with respect to all matters within the scope of this Agreement. No provision of this Agreement may be modified, waived, or discharged unless such waiver, modification, or discharge is agreed to in writing and signed by Employee and the Company's Chief Legal Officer. This Agreement shall be enforced in accordance with its terms and shall not be construed against either party. No waiver granted under this Agreement as to any provision in this Agreement shall constitute a subsequent waiver of such provision or of any other provision of this Agreement, nor shall it constitute the waiver of any performance other than the actual performance specifically waived.

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1

11. **No Conflicts**. Employee represents and warrants that Employee's performance of all the terms of this Agreement, and the performance of Employee's duties as an employee of the Company or the fact of Employee's employment with the Company, do not and will not breach any agreement between Employee and any other person, including any prior employer. Employee further agrees not to use or bring on to the Company premises (in hard-copy or in electronic form) any property or information belonging to a prior employer.

12. **Survival**. The obligations Employee has undertaken in this Agreement shall survive the Last Day and no dispute regarding any other provisions of this Agreement or regarding Employee's employment or the termination of Employee's employment shall prevent the operation and enforcement of these obligations.

13. **Counterparts**. This Agreement may be executed in one or more counterparts, each of which shall constitute an original, and all of which shall constitute one instrument. A signature made on a .PDF or facsimile copy of this Agreement or a signature to this Agreement transmitted by .PDF or facsimile shall have the same effect as an original signature. No party to this Agreement will raise the use of a .PDF file or other electronic transmission to deliver a signature as a defense to the formation of a contract and each party waives any such defense.

14. **Successors and Assigns**. This Agreement shall be binding upon, and inure to the benefit of, the parties and their respective successors and permitted assigns. Employee may not assign Employee's rights and obligations under this Agreement without prior written consent of the Company. The Company may assign this Agreement and/or its rights or obligations under this Agreement. Any and all rights and remedies of the Company under this Agreement shall inure to the benefit of and be enforceable by any successor or assignee of the Company.

15. **Governing Law, Venue and Waiver**. This Agreement shall be construed and enforced in accordance with the laws of the State of Florida without reference to principles of conflicts of laws. The parties stipulate that the exclusive venue for any legal proceeding arising out of this Agreement is the state and federal courts sitting in or covering Cobb County, Georgia. The parties waive any defense, whether asserted by motion or pleading, that the venue specified by this section is an improper or inconvenient venue; provided that the Company may commence a legal proceeding in any other relevant jurisdiction for the purpose of enforcing its rights under this Agreement. The parties further agree that a judge shall try any disputes between them, whether relating to this Agreement or any other conflict, claim or dispute.

16. **Restrictive Covenant Addenda**. Employee acknowledges and agrees that different restrictive covenant obligations other than those set forth in Section 3 and other provisions in this Agreement may apply to Employee if Employee primarily resides or works in certain jurisdictions. While Employee primarily resides or works in such a jurisdiction, including on the Last Day, Employee agrees that the restricted activities set forth in Section 3, as well as any other applicable provisions set forth in this Agreement, shall be superseded only as set forth in the applicable Addendum attached to this Agreement as **Appendix A**.

17. **Electronic Signature**. Employee agrees that the Company may enforce this Agreement with a copy for which Employee has provided an electronic signature, and that such electronic signature may be satisfied by procedures that the Company or a third party designated by the Company has established or may establish for an electronic signature system, and Employee's electronic signature shall be the same as, and shall have the same force and effect as, Employee's written signature. By electronically accepting this Agreement, Employee agrees to the following: "This electronic contract contains Employee's electronic signature, which I have executed with the intent to sign this Agreement."

12

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1

**IN WITNESS WHEREOF**, the undersigned have executed this Agreement freely and voluntarily with the intention of being legally bound by it.

EMPLOYEE                                          AVEANNA HEALTHCARE LLC

Signature: _Jaycee Everly_                        Signature: _____
           Signed by:
           A4A85C68F5704AE...

Printed Name:    Jaycee Everly                    Printed Name:___Jerry Perchik_____

Dated:    4/20/2026                               Title:___Chief Legal Officer_____

13

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1



## APPENDIX C
## ADDENDA TO PROTECTIVE AGREEMENT

As set forth in **Section 17** of the above Protective Agreement (the "Agreement"), Employee acknowledges and agrees that certain restricted activities set forth in Section 3, as well as other provisions set forth in the Agreement, are superseded or modified by an Addendum if Employee primarily resides or works in any of the following jurisdictions:

| | | | | |
|---|---|---|---|---|
| Alabama | Georgia | Nebraska | Oklahoma | Washington |
| California | Illinois | Nevada | Oregon | Wisconsin |
| Colorado | Louisiana | North Dakota | Virginia | Wyoming |

To the extent that Employee primarily resides or works in such a jurisdiction, Employee agrees that the restricted activities and other provisions set forth in the Agreement shall be superseded only as set forth in the applicable Addendum below, to which Employee agrees simultaneously with the execution of the Agreement.

Capitalized terms used but not defined in the following Addenda shall have the respective meanings ascribed to such terms in the Agreement. This section is expressly incorporated into and made part of each Addendum below.

### ALABAMA

**Addendum No. 1**:

The language in Section 3.3 "**Non-Solicitation and Non-Inducement of Employees**" are limited to employees who hold positions that are "uniquely essential to the management, organization or service of the business" (Ala. Code § 8-1-190(b)(1)).

### CALIFORNIA ADDENDUM

**Addendum No. 1**:

The language in Section 3 "**Restrictive Covenants**" is modified by adding the following:

The restrictions related to solicitation in Section 3 only apply while Employee is employed by or otherwise working for the Company. This modification shall be effective only during such period of time that Employee primarily resides or works in the State of California.

**Addendum No. 2**:

The language in Section 15 "**Governing Law, Venue and Waiver**" is modified by adding the following:

Employee understands that while residing or working in the State of California, the Agreement will be subject to the substantive laws of the State of California. During this period, venue shall be the State and Federal courts sitting in California and the parties waive any defense, whether asserted by motion or pleading, that the venue specified by this Addendum is an improper or inconvenient venue.

### COLORADO ADDENDUM

**Addendum No. 1**:

The language in Section 3 "**Restrictive Covenants**" is modified by adding the following:

If Employee primarily resides or works in the State of Colorado, the restrictions related to solicitation activities in Sections 3.2 and 3.4 only apply to the extent Employee earns, both at the time this Agreement is entered into and at the time the Company enforces it, an amount of annualized cash compensation equivalent to or greater than 60% of the threshold amount for highly compensated workers as determined by the Colorado Department of Labor and Employment at the time this Agreement is entered into, and such activities will

14

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1

involve the inevitable use of, or near-certain influence by Employee's knowledge of, Trade Secrets disclosed to Employee during the course of employment with the Company.

**Addendum No. 2**:

A new Section 3.8 "**Acknowledgement**" is added as follows:

Employee acknowledges and agrees Employee has been provided with, and has signed, a separate notice of Employee's obligations either (a) prior to Employee's acceptance of employment with the Company or (b) for current employees of the Company, at least fourteen (14) days before the effective date of this Agreement, in the following form and substance. Employee further acknowledges and agrees that Sections 3.2 and 3.4 shall not become effective until (c) Employee's first day of employment, if presented with such notice and a copy of the Agreement prior to accepting an offer of employment, or (d) for current employees of the Company, fourteen (14) days after receiving such notice and a copy of the Agreement.

**Addendum No. 3**:

The language in Section 4.1 "**Access and Use**" is modified by adding the following:

Employee acknowledges and agrees that the restrictions in this section are reasonable and shall not prohibit the disclosure of information arising from Employee's general training, knowledge, skill, or experience, whether gained on the job or otherwise, information readily ascertainable to the public, and/or information an employee has a right to disclose as legally protected conduct.

**Addendum No. 4**:

The language in Section 15 "**Governing Law, Venue and Waiver**" is modified by adding the following:

Employee understands that if Employee primarily resides or works in the State of Colorado at the time Employee's employment with the Company is terminated, the Agreement will be subject to the substantive laws and courts of the State of Colorado. During this period, venue shall be the State and Federal courts sitting in Colorado and the parties waive any defense, whether asserted by motion or pleading, that the venue specified by this Addendum is an improper or inconvenient venue.

## GEORGIA ADDENDUM

**Addendum No. 1**:

The language in Section 3.3 "**Non-Solicitation and Non-Inducement of Employees**" is modified so that its obligations are limited to the Restricted Geographic Area. "**Restricted Geographic Area**" means the territory (*i.e.*: (i) state(s), (ii) county(ies), or (iii) city(ies)) in which, during the twenty-four (24) months prior to the Last Day, Employee: (a) provided material services on behalf of the Company (or in which Employee supervised, directly or indirectly, the servicing activities), and/or (b) solicited Referral Sources or Patients or otherwise sold services on behalf of the Company (or in which Employee supervised, directly or indirectly, the solicitation or servicing activities related to such Patients or Referral Sources). If Employee performed Material Responsibilities that are not geographically limited to any territory but Employee's knowledge of the Company's Confidential Information and Trade Secrets could be used by a Competitor to unfairly compete with or undermine the Company's legitimate business interests, the Restricted Geographic Area shall be anywhere the Company does business. "**Material Responsibilities**" means the primary job duties and responsibilities Employee performed for the Company, including working with Patients or Referral Sources or in connection with supervising others.

## ILLINOIS ADDENDUM

**Addendum No. 1**:

A new Section 3.8 is added as follows:

Employee understands that the non-solicitation obligations under Section 3.2 through Section 3.4 do not apply to Employee if Employee does not earn the statutory minimum compensation set by Illinois statute (*e.g.*, between January 1, 2022 and December 31, 2026, the

15

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1

statutory threshold is $45,001 per year; between January 1, 2027 and December 31, 2031, the statutory threshold will be $50,001; and beginning on January 1, 2037, the statutory threshold will be $52,501 per year).

**Addendum No. 2**:

A new Section 3.9 is added as follows:

Employee agrees that before being required to sign this Agreement, the Company provided Employee with fourteen (14) calendar days to review it. The Company advises Employee to consult with an attorney before entering into this Agreement.

**Addendum No. 3**:

The language in Section 15 "**Governing Law, Venue and Waiver**" is modified by adding the following:

Employee understands that while residing or working in the State of Illinois, the Agreement will be subject to the substantive laws of the State of Illinois. During this period, venue shall be the State and Federal courts sitting in Illinois and the parties waive any defense, whether asserted by motion or pleading, that the venue specified by this Addendum is an improper or inconvenient venue.

**LOUISIANA ADDENDUM**

**Addendum No. 1**:

A new Section 2.10 "**Restricted Geographic Area**" is added as follows:

"Restricted Geographic Area" means the parishes (and equivalents) in the following list so long as Company continues to carry on business therein:  Ascension Parish, Assumption Parish, East Baton Rouge Parish, East Feliciana Parish, Iberia Parish, Iberville Parish, Jefferson Parish, Lafourche Parish, Livingston Parish, Orleans Parish, Plaquemines Parish, Pointe Coupee Parish, St. Charles Parish, St. Helena Parish, St. James Parish, St. John the Baptist Parish, St. Martin Parish, St. Mary Parish, St. Tammany Parish, Tangipahoa Parish, Terrebonne Parish, Washington Parish, West Baton Rouge Parish, and West Feliciana Parish, all so long as the Company's business is transacted therein. Employee hereby continues to stipulate that the Company does business in all of the above parishes, counties, and municipalities as of the date of this Louisiana Addendum. Employee also understands that the Company serves those counties of the adjacent states that border the State of Louisiana and that Employee will equally be bound in those geographic areas where Employee also performs Material responsibilities for the Company during the two (2) years prior to the Last Day.

**Addendum No. 2**:

The language in Section 3.2 "**Non-Solicitation and Non-Inducement of Patients or Referral Sources**" and Section 3.4 "**Non-Interference with Vendors and Suppliers**" is modified as follows:

The Non-Solicitation and Non-Inducement of Patients or Referral Sources covenant (in Section 3.2) and the Non-Interference with Vendors and Suppliers covenant (in Section 3.4) are limited to those Patients, Referral Sources, vendors and suppliers who are located in the Restricted Geographic Area. Employee agrees that the foregoing provides Employee with adequate notice of the geographic scope of the restrictions contained in the Agreement by name of specific parish or parishes (and equivalents), municipality or municipalities, and/or parts thereof.

**Addendum No. 3**:

A new Section 3.8 is added to the Agreement as follows:

Employee acknowledges that the Company's business and Employee's responsibilities for the Company are expanding. Accordingly, Employee agrees that the Company may amend the Restricted Geographic Area by way of separate written amendment(s) specifying new or additional parishes and counties. Any such separate written amendment(s) shall have the same force and effect as if the amendment(s) were originally a part of, or such parishes and counties were originally listed in, this Louisiana Addendum. The Company

16

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1



will provide Employee with any and all amendments that amend the Restricted Geographic Area. Employee agrees that if the Company provides Employee with an amendment that amends the Restricted Geographic Area that it will represent as fact that the Company does business in all of the geographical areas identified in such an amendment, unless Employee provides the Company with written notice disputing that fact within seven (7) days of Employee's receipt of the amendment, provided however that, despite such notice of dispute, should the Company be found to in fact be doing business in the disputed parish or county, such parish or county identified by the Amendment shall be included within the meaning of Restricted Geographic Area.

**Addendum No. 4**:

The parties agree that the effective date of the Agreement shall be no sooner than Employee's first day of employment with the Company; even if Employee signs the Agreement at an earlier date.

## NEBRASKA ADDENDUM

**Addendum No. 1**:

The language in Section 2.6 "**Patient(s)**" is stricken in its entirety and replaced with the following:

"**Patient(s)**" means any person(s) whom, within twenty-four (24) months prior to the Last Day, Employee directly provided products or services in connection with the Company's business.

**Addendum No. 2**:

Section 2.7 "**Referral Source(s)**" is stricken and replaced with the following:

"**Referral Source**" means any individuals, companies or government entities with which, in the twenty-four (24) months prior to the Last Day, Employee directly had a business relationship that referred Patients, Customers or projects or leads for Patients or projects to the Company.

**Addendum No. 3**:

The language in Section 3.2 "**Non-Solicitation and Non-Inducement of Patients or Referral Sources**" is stricken in its entirety and replaced with the following:

Except as prohibited by law, Employee agrees that during the Restricted Period, Employee shall not, directly or indirectly, solicit, aid or induce any Patient of the Company to purchase goods or services then sold by the Company from another person or entity, or assist or aid any other person or entity in identifying or soliciting any such Patient or or Referral Source if that sale or service would be located in the Restricted Geographic Area. "**Restricted Geographic Area**" means the territory (*i.e.*: (i) state(s), (ii) county(ies), or (iii) city(ies)) in which, during the twenty-four (24) months prior to the Last Day, Employee: (a) provided Material services on behalf of the Company and/or (b) solicited Patients or otherwise engaged in services on behalf of the Company. "**Material**" means Employee's primary job duties and responsibilities, including but not limited to in connection with working with Patients or Referral Sources or directly supervising individuals who work with Patients or Referral Sources.

## NEVADA

**Addendum No. 1**:

The language in Section 3.2 "**Non-Solicitation and Non-Inducement of Patients or Referral Sources**," Section 3.3 "**Non-Solicitation and Non-Inducement of Employees**," and Section 3.4 "**Non-Interference with Vendors and Suppliers**" shall not apply to anyone who is paid solely on an hourly wage basis, exclusive of any tips or gratuities.

## NORTH DAKOTA ADDENDUM

17

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1

**Addendum No. 1**:

The language in Section 3 "**Restrictive Covenants**" is modified by adding the following:

The restrictions related to solicitation only apply while Employee is employed by the Company. Employee further acknowledges that the restrictions do not prevent Employee from exercising a lawful profession, trade, or business as they only apply while Employee is employed by the Company.

**Addendum No. 2**:

The language in Section 15 "**Governing Law, Venue and Waiver**" is modified by adding the following:

Employee understands that while residing and working in the State of North Dakota, the restrictions related to restrictive covenants in Section 3 will be subject to the substantive laws of the State of North Dakota.

## OKLAHOMA ADDENDUM

**Addendum No. 1**:

The language in Section 3.2 "**Non-Solicitation and Non-Inducement of Patients or Referral Sources**" is modified with the following:

Employee covenants and agrees that during the Restricted Period, Employee will not directly solicit the sale of goods, services or a combination of goods and services from the established Patients of the Company.

## OREGON ADDENDUM

**Addendum No. 1**:

The definition of "**Patient(s)**" in Section 2.6 is modified as follows:

"**Patient(s)**" means any person(s) or entity(ies) who: (a) as of the Last Day, is doing business with the Company or would reasonably be expected to return to the Company for purposes of doing business; and (b) within twenty-four (24) months prior to the Last Day, Employee, directly or Indirectly: (i) provided products or services in connection with the Company's business; or (ii) provided written proposals about products or services in connection with the Company's business.

**Addendum No. 2**:

The language in Section 3.2 "**Non-Solicitation and Non-Inducement of Patients or Referral Sources**" is stricken in its entirety and replaced with the following:

During the Restricted Period and in connection with a Competitive Product or Service, Employee shall not directly or Indirectly: (a) solicit, refer or attempt to solicit or refer any Patient or Referral Source to a Competitor; (b) transact or attempt to transact business with any Patient or Referral Source; or (c) induce or encourage any Patient or Referral Source to terminate a relationship with the Company or otherwise to cease accepting services or products from the Company.

## VIRGINIA ADDENDUM

**Addendum No. 1**:

The language in Section 3.2 "**Non-Solicitation and Non-Inducement of Patients or Referral Sources**" shall not apply Employee if Employee qualifies as a "low-wage employee" or is non-exempt pursuant to Virginia law.

**Addendum No. 2**:

18

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1

The language in Section 3.3 "**Non-Solicitation and Non-Inducement of Employees**" is stricken in its entirety and replaced with the following:

During the Restricted Period, Employee shall not directly or Indirectly: (a) solicit, recruit, encourage (or attempt to solicit, recruit or encourage), or by assisting others in soliciting, recruiting or encouraging, any individual who Employee knows (or reasonably should know) is currently employed by the Company ("Restricted Employees"); (b) contact or communicate with Restricted Employees for the purpose of inducing, assisting, encouraging, and/or facilitating them to terminate their employment with the Company or find employment or work with a Competitor; (c) provide or pass along to any Competitor the name, contact, and/or background information about any Restricted Employees or provide references or any other information about them; (d) provide or pass along to Restricted Employees any information regarding potential jobs with a Competitor, including but not limited to job openings, job postings, or the names or contact information of a Competitor hiring people or accepting job applications; and/or (e) offer employment or work to any Restricted Employees on behalf of a Competitor.

**Addendum No. 3**:

The language in Section 4.2 "**Duration of Confidential Information and Trade Secrets**" shall be stricken in its entirety and replaced with the following:

This obligation of non-disclosure and non-use shall last so long as the information remains confidential or for three (3) years following the Last Day, whichever occurs first.  Employee also understands that Trade Secrets are protected by statute and are not subject to any time limits. If Employee has any questions about whether such information is protected information, Employee agrees to contact the Company's Chief Legal Officer in writing before using, disclosing, or distributing any Confidential Information or Trade Secrets.

## WASHINGTON STATE ADDENDUM

**Addendum No. 1**:

The language in Section 2.6 "**Patient(s)**" is stricken in its entirely and replaced with the following:

"**Patient(s)**" means any person(s), organization(s) or entity(ies) about whom Employee had knowledge or Confidential Information, and who is a current purchaser of products or services from the Company on the Last Day or at the time Employee engages in any conduct that is prohibited by Section 3.2.

**Addendum No. 2**:

The language in Section 3.2 "**Non-Solicitation and Non-Inducement of Patients or Referral Sources**" is stricken and replaced in its entirety with the following:

During the Restricted Period and in connection with a Competitive Product or Service, Employee shall not, directly or Indirectly, solicit or attempt to solicit any Patient or Referral Source to terminate a relationship with the Company or otherwise to cease or reduce accepting or purchasing products or services from the Company.

**Addendum No. 3**:

The language in Section 3.3 "**Non-Solicitation and Non-Inducement of Employees**" is stricken and replaced in its entirety with the following:

During the Restricted Period, Employee shall not, directly or Indirectly, solicit or attempt to solicit any individuals who Employee knows (or reasonably should know) are employees of the Company to terminate their employment with the Company.

**Addendum No. 4**:

The language in Section 3.4 "**Non-Interference with Vendors and Suppliers**" is stricken in its entirety and replaced with the following:

19

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1

During the Restricted Period, Employee shall not, directly or Indirectly, interfere with the Company's relationships with its vendors or suppliers in any way that would impair the Company's relationship with such vendors or suppliers, including by reducing, diminishing or otherwise restricting the flow of supplies, services or goods from the vendors or suppliers to the Company. To the extent this section is determined to be a non-competition covenant, the parties agree that it is subject to the terms of this section.

**Addendum No. 5**:

The language in Section 3.7 "**General Exceptions**" is stricken in its entirety and replaced with the following:

Employee understands that Employee's non-solicitation agreements in this section shall not apply to Employee if Employee is covered under applicable state statute or local ordinance/rule prohibiting non-solicitation agreements, including on the basis of Employee's profession. Any term or provision in this Agreement, including but not limited to all or part of any restrictive covenant in Sections 3.2 through 3.4, that is or is determined to be a non-competition covenant under Washington state law is only effective and enforceable once Employee earns, on an annualized basis, more than the annual required minimum compensation, which may be prorated for service less than a year, for enforcement of non-competition covenants found in Title 49 RCW. For absence of doubt, Employee understands and agrees that even if Employee does not earn the required minimum compensation when Employee signs this Agreement, the non-competition covenants later become enforceable if Employee begins to earn sufficient compensation for their enforcement. This required minimum compensation for enforcement of non-competition covenants does not affect the enforceability of any other term or provision of this Agreement, including but not limited any term or provision, or part thereof, that is or is determined to be a non-solicitation agreement under Washington state law found in Title 49 RCW.

**Addendum No. 6**:

The language in Section 4.4 "**Additional Legal Exceptions to Non-Disclosure Obligations**" is modified to add the following sentence to the end of that section:

Nothing in this Agreement prohibits Employee from discussing or disclosing conduct that Employee reasonably believes under Washington State, Federal, or common law to be illegal discrimination, illegal harassment, illegal retaliation, a wage and hour violation, or sexual assault, or that is recognized as against a clear mandate of public policy.

**Addendum No. 7**:

The language in Section 15 "**Governing Law, Venue and Waiver**" is stricken in its entirety and replaced with the following:

This Agreement shall be construed and enforced in accordance with the substantive laws of the State of Washington without reference to principles of conflicts of laws. The parties stipulate that the exclusive venue for any legal proceeding arising out of this Agreement is the state and federal courts sitting in Seattle, Washington and waive any defense, whether asserted by motion or pleading, that the venue specified by this section is an improper or inconvenient venue, provided that a party may commence a legal proceeding in a relevant jurisdiction for the purpose of enforcing its rights under this Agreement. The parties further agree that a judge shall try any disputes between them, whether relating to this Agreement or any other conflict, claim or dispute.

## WISCONSIN ADDENDUM

**Addendum No. 1**:

The language in Section 2.2 "**Competitive Product or Service**" is stricken in its entirety and replaced with the following:

"**Competitive Product or Service**" means any product, process, system or service (in existence or under development) of any person or organization other than the Company that competes with the Company's business and upon which Employee worked or had responsibilities at the Company during the twenty-four (24) months prior to the Last Day (as defined below).

20

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1

**Addendum No. 2**:

The language in Section 2.6 "**Patient(s)**" is stricken in its entirety and replaced with the following:

"**Patient(s)**" means any person(s) or entity(ies): (a) whom, within twenty-four (24) months prior to the Last Day, Employee, directly or Indirectly (*e.g.*, through employees whom Employee supervised) provided products or services in connection with the Company's business, or (b) about which Employee has Confidential Information or Trade Secrets that could be used to compete against the Company with respect to a Competitive Product or Service.

**Addendum No. 3**:

The language in Section 3.2 "**Non-Solicitation and Non-Inducement of Patients or Referral Sources**" is stricken in its entirety and replaced with the following:

During the Restricted Period and in connection with a Competitive Product or Service, Employee shall not directly or Indirectly: (a) solicit or refer or attempt to solicit or refer any Patient or Referral Source to a Competitor in connection with a Competitive Product or Service; or (b) induce or encourage any Patient or Referral Source to terminate a relationship with the Company or otherwise to cease accepting services or products from the Company in order to accept a Competitive Product or Service from a Competitor.

**Addendum No. 4**:

The language in Section 3.3 "**Non-Solicitation and Non-Inducement of Employees**" is stricken in its entirety and replaced with the following:

During the Restricted Period, Employee shall not directly or Indirectly solicit or encourage (or attempt to solicit or encourage) any Key Employee (defined below) of the Company to: (a) terminate employment with the Company in order to enter into employment or a business relationship with a competitor of the Company in which the Confidential Information the Key Employee has could be used to competitively harm the Company; or (b) enter into or commence any relationship in which the Key Employee would provide Competitive Products or Services. For purposes of this Section 3.3, "**Key Employee**" means any person who is: (i) employed by the Company, and is either someone with whom Employee had material contact with and obtained Confidential Information about that could be used to persuade the Key Employee to leave Key Employee's employment with the Company or was supervised by Employee during the twelve (12) months immediately preceding the Last Day, and (ii) is a manager, officer, director, or executive of the Company; and/or is in possession of Confidential Information and/or Trade Secrets that could be used to competitively harm the Company by the Competitor. Notwithstanding the foregoing, this Section 3.3 does not prohibit Employee from conducting generalized searches for employees or independent contractors by use of general advertisements or solicitations, including but not limited to advertisements or solicitations through newspapers, internet or other media of general circulation or engaging and using a search firm not specifically targeted at such individuals.

**Addendum No. 5**:

The language in Section 4.2 "**Duration of Confidential Information and Trade Secrets**" is stricken in its entirety and replaced with the following:

This obligation of non-disclosure and non-use of Confidential Information shall last only so long as the information remains confidential. However. Employee understands and agrees that to the extent this obligation of non-disclosure and non-use of Confidential Information applies to information that does not meet the definition of a Trade Secret, it shall apply only for twenty-four (24) months after the date on which Employee's employment with the Company ends and only in geographic areas in which the unauthorized use or unauthorized disclosure of such Confidential Information could competitively harm the Company. Employee also understands that Trade Secrets are protected by statute and are not subject to any time limits. Nothing in this Agreement limits or affects the protection given to confidential information and trade secrets under statutory and common law. Employee agrees to contact the Company's Chief Legal Officer before using, disclosing, or distributing any Confidential Information or Trade Secrets if Employee has any questions about whether such information is protected information.

**Addendum No. 6**:

The language in Section 7 "**Severability and Reformation**" is modified to add the following after the last sentence of the section:

21

Docusign Envelope ID: 57A787BD-61AD-429B-9F33-041A5C3AB9B1



The restrictive covenants in Sections 3.2, 3.3, 3.4 and 4.1 are intended to be divisible and to be interpreted and applied independently.

**Addendum No. 7**:

Section 8 "**Tolling**" is stricken in its entirety.

**WYOMING ADDENDUM**

**Addendum No 1**:

The language in Section 3.2 through 3.4 shall be modified as follows:

If a court determines that W.S. § 1-23-108 applies to non-solicitation covenants, than Sections 3.2 through 3.4 shall only apply to Employee: (a) for the protection of the Company's Trade Secrets (where Employee has access to or use of such Trade Secrets); and/or (b) if Employee is determined to be (i) executive and management personnel or (ii) professional staff to executive and management personnel. For purposes of this Addendum, "Trade Secrets" means as that term is defined under Section 40-24-101(a)(iv) Wyoming Uniform Trade Secrets Act, WY Stat § 40-24-101 (2024).

SIGNATURE: *Signed by:* Jaycee Everly  
A4A85C68F5704AE...

NAME: Jaycee Everly

DATE: 4/20/2026

22